```
         IN THE UNITED STATES DISTRICT COURT FOR THE

                     DISTRICT OF NEBRASKA

ANNA TONJES,                   )
                               )
              Plaintiff,       )         8:08CV124
                               )
     v.                        )
                               )
THE EVANGELICAL LUTHERAN GOOD  )         MEMORANDUM OPINION
SAMARITAN SOCIETY,             )
                               )
              Defendant.       )
_____)
```

On January 12, 2009, this case came on for trial before the Court without a jury. Evidence was adduced on behalf of both the plaintiff and the defendant, and the matter is now before the Court for decision.

## STIPULATED FACTS

In the order on final pretrial conference (Filing No. 29), the parties agreed that the following facts may be accepted as established.

> 1) Plaintiff Anna Tonjes ("Tonjes") is a Nebraska resident.
>
> 2) Defendant ELGSS is a not-for-profit North Dakota corporation with its principle place of business in Sioux Falls, South Dakota.
>
> 3) Defendant owns and operates a nursing home located at 815 Logan Street in Scribner, Nebraska.
>
> 4) On March 1, 2006, while at ELGSS's nursing home in Scribner, Tonjes fell on a sidewalk outside the nursing home and suffered a displaced comminuted fracture of her right patella.

> 5) The parties have stipulated and agreed that the treatment received by the plaintiff for a displaced comminuted fracture of the right patella was reasonable and necessary for the treatment of said condition.
>
> 6) The parties have stipulated that plaintiff would be responsible for medical charges in the total amount of $12,698.63 for the treatment of a displaced comminuted fracture of the right patella, which charges are fair and reasonable for medical treatment in this community.

**JURISDICTION**

This action was removed from the District Court of Dodge County, Nebraska, pursuant to 28 U.S.C. § 1441, *et seq*. The Court has previously addressed the issue of jurisdiction and found that this is a diversity action and that the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

**BACKGROUND**

The facts in this case are relatively straightforward. The defendant is a religious, non-profit organization, dedicated to providing shelter and supportive services to elderly persons in need.  It is a North Dakota corporation which operates nursing homes in a number of states, including Nebraska.  One of these homes is the Good Samaritan Society-Scribner facility, located at 815 Logan Street in Scribner, Nebraska.

The facility consists of three wings and is licensed for seventy-five (75) beds.  Exhibit 111 is a hand-drawn diagram which describes the layout of the facility.  Logan Street runs

east and west, and this facility lies to the south of Logan Street.  There is a parking lot that extends southward from Logan Street to the main entrance of the facility.  There are three wings, the 100, 200 and 300 wing.  The 100 wing extends to the east from that main entrance, and the 200 wing extends to the west from the main entrance.  If a person were to walk down the length of the 200 wing, he or she would come to the 300 wing, which extends to the south, at the west end of the 200 wing.

As the drawing describes, most of the parking lies directly north of the main entrance.  Off to the west of the main entrance, there are two parking places identified for handicapped parking.  From those two spaces, there is a side walk that leads eastward a short distance to the main entrance and another sidewalk which extends to the west, approximately 75 to 100 feet, to a doorway which is at the north end of the 300 wing.

That door bears two signs in relatively large letters, advising any person approaching that the door is locked and that all family, visitors and friends should use the main entrance (Exhibit No. 103).  The main entrance to the building also bears signs advising all persons that the main entrance is the only entrance to which access to the building can be obtained by the public, visitors or friends of the residents.

From about 1970 to about 1990, the plaintiff was employed by the Good Samaritan facility.  At the time that she terminated her employment with the defendant, all three wings were in existence, and at that time, all of the doors were open

to the public.  It was in 1997 that the facility changed its practice, locked all of the doors except the main entrance, and posted the signs advising the public that the main entrance was the only entrance available for access to the building.

After her retirement from the Good Samaritan facility, plaintiff continued to visit the rest home from time to time, as her deceased husband resided there for a while, and more recently, her daughter-in-law was a resident.

On March 1, 2006, plaintiff was employed at the Old Hotel in Scribner, serving principally as a bartender.  She received a call on March 1, 2006, from a resident of the rest home asking if she would deliver two dinners to him.  She agreed to do this.  The dinners were prepared at the Old Hotel.  She inquired of her employers whether it would be all right if she delivered these to the rest home, and they okayed that delivery.

Plaintiff waited until her work day ended at 5 p.m., checked out of the Old Hotel, and drove to the rest home, apparently parking in one of the handicapped parking stalls shown on Exhibit No. 111.  The day was clear and dry, and it was still daylight.  She got out of her car and decided to enter the 300 wing through the door which was at the north end, approximately 75 to 100 feet from where her car was parked.  The main entrance was only about 20 to 30 feet to the east.  As plaintiff approached the door, she said she saw a crack or noticed a crack in the sidewalk, and noticed that the cement was raised about one

half to one inch.  She subsequently fell and fractured her kneecap.

The crack in the sidewalk occurred during the 2005-2006 winter, and the one portion of the sidewalk did heave some, so a portion of it was uneven with the rest of the sidewalk.  This is reflected in plaintiff's Exhibit No. 1, which consists of three photographs that are attached together, and the defendant's Exhibit Nos. 101 and 102.

## DISCUSSION

Both parties agree as to the elements of plaintiff's claim.  Those are most recently set forth in *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004).  At 267 Neb. 807, the Nebraska Supreme Court stated:

> [T]he owner or occupier is subject to liability if the lawful visitor proves (1) the owner or occupier either created the condition, knew of the conditions, or by the exercise of reasonable care would have discovered the condition; (2) the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the owner or occupier should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the owner or occupier failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the lawful visitor.

The Court finds that plaintiff has failed to establish her claim against the defendant. All of the doors to the premises other than the main entrance had been locked for some nine years, and there was signage posted upon all of the doors as well as the main entrance, advising visitors of this fact and that they were to use the main entrance. *See* Exhibit Nos. 103, 104 and 105. The plaintiff had visited the premises on a number of occasions, and the Court can assume that she was aware of the signage, although she may not have thought about it at the time she decided to use the entrance to the 300 wing. The condition in the sidewalk had been created by the freeze and thaw cycles of the 2005-2006 winter. This crack and the heaving that occurred were obvious to the plaintiff.

She testified that she had observed this condition, and yet she apparently took no steps to avoid tripping if, in fact, this condition was the cause of her fall. The question of the cause of her fall is in dispute. She has stated she did not know what caused the fall and told the nurse at the hospital that she either slipped or did not see the curb. At the trial, she said she tripped on the crack. The crack is depicted in Exhibit Nos. 1, 2 and 102. The Court finds from an examination of those exhibits that the condition of which plaintiff complains is plainly observable and does not create an "unreasonable risk of harm to the lawful visitor."

This case is similar to *Doht v. Village of Walthill*, 207 Neb. 377, 299 N.W.2d 177 (1980). In that case, the Nebraska Supreme Court stated at pp. 178-179:

> It has also been the consistent position of this court that slight holes or depressions in public ways, including sidewalks, which are not in the nature of traps and from which danger could not reasonably be anticipated, are not defects for which an action will lie. *Hupfer v. City of North Platte, supra; Christensen v. City of Tekamah*, 201 Neb. 344, 268 N.W.2d 93 (1978). The test ordinarily is whether the inequalities are of such magnitude or extent as to be likely to cause injury to travelers who are proceeding with due care. *Christensen v. City of Tekamah, supra.*
>
> Given the facts of this case, we find the sidewalk defect here involved is such a minor irregularity that negligence may not be predicated thereon. To do so would render the Village an insurer of the safety of pedestrians, which is not its duty or obligation.
>
> Plaintiff argues that the irregularity is in the nature of a trap because it drops away from the direction plaintiff was traveling and is not readily apparent. We disagree. The dropoff was visible to anyone traveling in the direction of plaintiff when in near proximity to it and readily apparent to anyone using due care.

This crack and the difference in elevation were readily apparent to any person using the sidewalk and readily apparent to anyone using due care. For these reasons, the Court finds in favor of

defendant and that plaintiff's complaint should be dismissed with prejudice.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 22nd day of January, 2009.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court